IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| CHASTADY M. BYNES, | \* |
| Plaintiff, | \* |
| v. | \*   CV 111-002 |
| SHAB MANAGEMENT, LLC, | \* |
| Defendant. | \* |

**O R D E R**

Presently pending before the Court is Defendant Shab Management, LLC's ("Defendant") motion for summary judgment. (Doc. no. 36.) For the reasons set forth below, Defendant's motion is **GRANTED**.

**I. BACKGROUND**

This case arises from Plaintiff's termination from her position as the general manager of the Holiday Inn owned by Guru Hotels, Inc. ("Guru Hotels"). Plaintiff is an African-American female who contends that she was discriminated against during the course of her employment. The relevant facts are set forth below.

A.  **Factual Background**

In 2005, Guru Hotels began construction on a new Holiday Inn facility in Augusta, Georgia. (Singh Decl. ¶ 4.) Under an

agreement with Guru Hotels, Defendant was responsible for staffing and managing the new Holiday Inn. (Id.) Accordingly, Defendant began a search for qualified individuals to work at the hotel, including an individual to fill the position of general manager. (Id.)

Defendant, however, found it difficult to locate a general manager that satisfied Holiday Inn's requirements for management positions. (Id. ¶ 5.) Under the terms of the Holiday Inn Standards Manual in place during Plaintiff's employment, the general manager was required to hold two certifications. (Id.) First, the general manager needed to be certified through the Holiday Inn General Manager Program. (Doc. no. 36, Ex. A.) In order to attain this certification, the employee was required to achieve a score of eighty percent or better on the General Manager test given on the last day of the program. (Id.) Second, the general manager was required to be a Certified Hotel Administrator ("CHA"). (Id.) Holiday Inn, however, provided franchisees with the option of hiring a general manager without a CHA certification, as long as the general manager obtained the CHA certification within twelve months of being hired. (Id.)

Defendant eventually hired Plaintiff to work as the general manager at the new Holiday Inn.[1] (Id. ¶¶ 7-8.) Plaintiff did not hold a CHA certification, but Defendant believed that she could be trained and eventually pass the CHA certification test

---

[1] Defendant claims that Plaintiff was hired as a "trainee general manager" until she acquired her CHA certification.

2

within twelve months of her hiring.  (Id. ¶ 6.)  Plaintiff was initially responsible for overseeing the staffing and set-up of the hotel, which was scheduled to open in November of 2005. (Id. ¶ 4.)  As the general manager, Plaintiff received a salary of $25,000.00 per year, but she was promised an increase in salary upon the opening of the hotel.  (Bynes Dep. at 36.)

During the course of her employment, Plaintiff worked under the supervision of Joe Tate, an African-American male employee. (Singh Decl. ¶ 8.)  Only two management employees earned more than Plaintiff.  (Id. ¶ 10.)  Mr. Tate, her supervisor, earned $28,600.00 per year.  (Id.)  In addition, Desai Dushyant, an employee who managed the Augusta Inn and Conference Center ("Augusta Inn"), earned $30,000.00 per year.  (Id.)  According to Defendant, Mr. Dushyant earned more than Plaintiff because managing the Augusta Inn was a much more burdensome position than managing the Holiday Inn.  (Id.)  The Augusta Inn had 252 rooms, whereas the Holiday Inn had only 150 rooms.  (Id.) Additionally, the Augusta Inn had a large bar activity and a small staff, whereas the Holiday Inn had a small bar activity and a large staff.  (Id.)  Plaintiff disputes this fact and asserts that she had a heavier workload than Mr. Dushyant. (Def. Stmt. of Material Facts ¶ 22.)  The only other employee who earned more than Plaintiff was a Caucasian male named Joseph Newman.  Mr. Newman was the chief engineer/maintenance worker at

the Holiday Inn for a short period of time. (Singh Decl. ¶ 11.) He received a salary of $31,200.00 per year.[2] (Id.)

Plaintiff was terminated from her position in November of 2006. Defendant contends that Plaintiff was terminated because she failed to properly perform her job. (Id. ¶ 13.) According to Surinderjit Singh, Defendant's manager, Plaintiff often missed work and mandatory meetings with the Holiday Inn personnel who supervise franchisees. (Id.) Mr. Singh claims that Holiday Inn officials told him that Plaintiff was not qualified for her position and must be terminated as a result. (Id.) He states that he was told that if he did not terminate Plaintiff, the Holiday Inn franchise would be removed from Defendant's hotel. (Id.)

Mr. Singh also asserts that he terminated Plaintiff because she failed to obtain her mandatory CHA certification. (Id. ¶ 14.) Plaintiff admits that she took the CHA test a month prior to her termination. (Bynes Dep. at 82.) Plaintiff claims that she never received the test results, but admits that she is not certified as a CHA. (Id. at 82-83.) Defendant contends that Plaintiff failed her exam and thus did not meet the qualifications for the general manager position. (Singh Decl. ¶ 14.) At the time of her termination, Plaintiff made no accusation of discrimination.

---

[2] Defendant also managed two other properties in Augusta, Georgia. (Singh Decl. ¶ 9.) The general managers at these other facilities were, like Plaintiff, African-American women. (Id.) Ms. Cathy Gibson worked at the Wingate Inn and received a salary of $23,000.00 per year. (Id.) Ms. Gail Mims worked at the Hampton Inn and received a salary of $22,000.00 per year.

Following Plaintiff's termination, Defendant hired Joseph Sloan, a Caucasian male, to replace Plaintiff and serve as the general manager of the Holiday Inn. Unlike Plaintiff, who only managed the Holiday Inn, Mr. Sloan was hired to manage the Holiday Inn, the Belair Conference Center, the Hampton Inn & Suites, and the Wingate Inn. (Doc. no. 36, Ex. D.) Mr. Sloan was paid $65,000.00 per year. (Singh Decl. ¶¶ 17-18.)

After learning of Mr. Sloan's hiring, Plaintiff began to suspect that she was terminated on account of her race and gender, a fact which Defendant disputes. (Bynes Dep. at 12-16.) According to Mr. Singh, Mr. Sloan was hired because he had a CHA certification, years of experience working in Holiday Inn hotels, and the expertise needed to manage additional facilities. (Singh Decl. ¶ 16.)

**B.   Procedural Background**

Plaintiff initiated the present action on January 4, 2011, against Harinderjit Singh, Surinderjit Singh, Balvinder Singh, Guru Hotels, Newport Group, Inc., and Shab Management. (Doc. no. 1.) Approximately one month later, Plaintiff filed an amended complaint alleging violations of various federal statutes, including Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, the Equal Pay Act ("EPA"), 29 U.S.C. § 216, and 42 U.S.C. §§ 1981 & 1985(3). (Doc. no. 15.)

On August 30, 2011, the Court dismissed Plaintiff's EPA and § 1981 claims as time barred. The Court also dismissed the § 1985(3) claims predicated upon alleged violations of the EPA.

(Doc. no. 34.)  Finally, the Court held that Plaintiff could only maintain her Title VII claim against her former employer, Shab Management, and therefore dismissed the Title VII claims against the other defendants.  Thus, the only remaining claim pending before this Court is Plaintiff's Title VII claim against Defendant Shab Management.

On September 9, 2011, Defendant moved for summary judgment on Plaintiff's Title VII claim.  (Doc. no. 36.)  Defendant contends that Plaintiff failed to present any direct or circumstantial evidence of discriminatory treatment.  Plaintiff, however, alleges that Defendant's reasons for her termination were pretextual, and thus there is a question of material fact.  These arguments are discussed in detail below.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Facts are "material" if they could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences

in [its] favor." U.S. v. Four Parcels, 941 F.2d 1428, 1437 (1991) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrate[ing]

7

that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave Plaintiff appropriate notice of the motion for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. no. 37.) Therefore, the notice requirements of Griffith

v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

Plaintiff contends that she was discriminated against in violation of Title VII. She claims that she was (1) terminated because of her race and gender and (2) paid less than other comparative employees because of her race and gender. Defendant asserts that Plaintiff's Title VII claims must fail as a matter of law as Plaintiff has not established a prima facie case of discrimination.

#### A.   Title VII Claim Based on Termination

The relevant portion of Title VII provides that an employer may not "discharge any individual . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [or] sex." 42 U.S.C. § 2000e-2(a)(1). Claims of race and gender discrimination based on circumstantial evidence, as is the case here,[3] are evaluated under the burden shifting framework developed in McDonnell

---

[3] Plaintiff has not presented any evidence of direct discrimination and she does not rely on direct discrimination in response to Defendant's motion for summary judgment. See Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir. 1986) (a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned); see also Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned).

Douglas v. Green, 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case, or "facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). The burden then shifts back to the plaintiff who must show that the employer's proffered reasons for its actions were not the real reasons that motivated its conduct, but that the employer's proffered reasons were merely pretext for discrimination. Id. at 253.

1. Prima Facie Evidence

To establish a prima facie case of Title VII race and gender discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) she was replaced by an individual outside of her protected class. Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003).

Here, Defendant concedes that Plaintiff satisfies all elements of her prima facie case with the exception of the second element. Defendant argues that Plaintiff is unable to produce any evidence that she was qualified for the position of

general manager. Plaintiff, on the other hand, claims that she was qualified for the general manager position because she passed the General Manager Test, and there is no evidence that she failed her CHA certification test.

Both parties agree that the Holiday Inn Standards Manual required a general manager to (1) pass the General Manager Test and (2) obtain a CHA certification within twelve months of being hired. (Doc. no. 36, Ex. A.) Moreover, both parties agree that Plaintiff satisfied the first requirement as she obtained a score of ninety-eight percent on her General Manager Test. Therefore, the only question this Court must resolve is whether Plaintiff can show that she obtained her CHA certification. On this point, it is undisputed that Plaintiff was not CHA certified when she was hired. Moreover, she never received the results of her CHA test. Indeed, Plaintiff testified that she is not CHA certified. (Bynes Dep. at 83.) Having presented no evidence that she *is* CHA certified, there is no genuine issue of fact that Plaintiff did not meet the requirements for the general manager position. Because Plaintiff cannot demonstrate that she was qualified, she cannot establish a prima facie claim of discrimination.

2.  Pretext

Even if Plaintiff established a prima facie case of race and gender discrimination, Defendant articulated legitimate

11

nondiscriminatory reasons for her termination, and Plaintiff has failed to produce evidence that those reasons were pretext for discrimination. In order to show pretext, Plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision." Burdine, 450 U.S. at 256. A plaintiff may establish pretext by demonstrating that the employer has offered inconsistent reasons for the challenged employment action. Tidwell v. Carter Prods., 135 F.3d 1422, 1428 (11th Cir. 1998). The fact that the employer offers an additional reason for the employment decision does not suggest pretext if both of the employer's reasons are consistent. Id.; see also Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1458-59 (11th Cir. 1997).

Plaintiff claims that Defendant provided inconsistent reasons for her termination. Specifically, Plaintiff asserts that Defendant, in its letter to the EEOC regarding her termination, stated that Plaintiff was fired "for not being a team leader." Plaintiff, however, claims that she was told in person that "she did not meet the Holiday Inn requirements." Despite Plaintiff's claim to the contrary, Defendant's reasons were not inconsistent. According to Mr. Singh, Plaintiff was terminated because she "did not meet Holiday Inn's requirements." (Singh Decl. ¶ 13.) He stated that Plaintiff "missed work and, more importantly, missed mandatory meetings

with the Holiday Inn personnel who supervise the franchisees." (Id.) Mr. Singh noted that Plaintiff's failure to pass the CHA test combined with her failure to perform her job adequately and meet the demands of Holiday Inn led to her termination. (Id. ¶ 15.) This testimony is consistent with Plaintiff's separation notice. The notice states that Plaintiff was terminated because she "did not meet Holiday Inn requirements."[4] (Doc. no. 36, Ex. B.)

The testimony of Mr. Singh and the separation notice are also consistent with Defendant's letter to the EEOC. In that letter, Mr. Sloan stated that Plaintiff's dismissal was the result of "a failure on her part to understand her role in a full service hotel." (Doc. no. 36, Ex. E.) Mr. Sloan went on to explain that "being a team leader required [Plaintiff] to lead by example. One example of not performing was her inability to tend to the needs of the hotel by working a full schedule, meeting deadlines, [and] showing up for appointments . . . ."[5] (Id.) Although Defendant, for the first time in the

---

[4] Plaintiff claims Mr. Singh told her that she was terminated because she did not meet the Holiday Inn requirements as she did not have "ten years of management experience." (Bynes Dep. at 105.) Plaintiff claims that Defendant's reasons were pretextual because ten years of management experience was not an actual Holiday Inn requirement. However, whether Holiday Inn required its general managers to have ten years of experience does not change the fact that Plaintiff was not certified as a CHA, and therefore she did not meet Holiday Inn's requirements.

[5] Although Plaintiff asserts that she never missed a meeting or a deadline and always worked her entire schedule, her assertions and perceptions do not cast sufficient doubt on Defendant's explanations to survive summary judgment. As the Eleventh Circuit has explained, "[t]he inquiry into pretext centers upon the employer's beliefs, and not the

13

letter to the EEOC, cites Plaintiff's failure to be an effective team leader as a basis for her termination, this does not support Plaintiff's claim that Defendant's reasons were pretextual. In that same letter, Mr. Sloan explained that one of the reasons Plaintiff was not an effective team leader was her failure to work a full schedule and meet deadlines, which is consistent with Mr. Singh's testimony that she missed work and meetings. Plaintiff has not presented sufficient evidence to support her claim that Defendant's proferred reasons are unworthy of credence, and therefore Defendant is entitled to summary judgment on Plaintiff's Title VII termination claim.

### B.  Title VII Claim Based on Unequal Pay

Plaintiff also asserts that during the course of her employment she was discriminated against in terms of pay. In order to establish a prima facie case of disparate pay, Plaintiff must show that "she occupies a position similar to that of a higher paid employee who is not a member of her protected class." Crawford v. Carroll, 529 F.3d 961, 974-75 (11th Cir. 2008) (citing Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994)). The employee whom the plaintiff identifies as a comparator "must be similarly situated in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (quotation marks and citation

---

employee's own perceptions of [her] performance." Holifield, 115 F.3d at 1565; see also Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332-33 (11th Cir. 1998).

omitted) (emphasis added). The Eleventh Circuit has held this to mean that "[t]he comparator must be nearly identical to the plaintiff." Id.; see also Drake-Sims v. Burlington Coat Factory Warehouse of Ala. Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009).

Plaintiff has failed to establish a prima facie case of disparate pay because none of the four possible comparators whom she identifies are similarly situated to her. Plaintiff identifies Mr. Dushyant, Mr. Tate, Mr. Newman, and Mr. Sloan as comparators. However, these employees held different positions with different responsibilities than Plaintiff and thus cannot be considered similarly situated.

Mr. Dushyant was the general manager of a separate facility that had more rooms, a larger staff, and more business than the Holiday Inn where Plaintiff was the general manager.[6] Plaintiff admitted that she understood that not all managers were paid the same and that many factors contribute to the salary of a general manager. (Bynes Dep. at 38-39.) Likewise, Mr. Tate was Plaintiff's supervisor. He was responsible for overseeing the general managers at several local hotels. Indeed, Plaintiff

---

[6] Plaintiff contends that Mr. Dushyant is a comparator because the two held similar positions. (Bynes Dep. at 69.) In fact, Plaintiff believes that her workload was heavier than Mr. Dushyant's workload. (Id.) In support of this assertion, Plaintiff claims that every time she observed Mr. Dushyant at work "he was never doing anything." (Id.) Moreover, she claims that the Augusta Inn was an older, rundown hotel that was not as busy as the new Holiday Inn. (Id. at 69.) However, despite Plaintiff's personal observations, she has not put forth any evidence to suggest that she and Mr. Dushyant were "similarly situated *in all respects*."

15

admitted that Mr. Tate is not a proper comparator as he occupied a different position than she did. (Bynes Dep. at 26, 140.)

Next, Plaintiff contends that the hiring of Mr. Newman, the hotel's chief engineer, supports her disparate pay claim.[7] However, merely asserting that someone outside of her protected class earned more than she did is not sufficient to establish a prima facie case of disparate pay. Plaintiff takes the position that a hotel's maintenance worker should not earn more than its general manager. She contends that "the maintenance engineer, a white male, would be below her in any organizational chart of the management company." (Doc. no. 38, at 12.) However, Plaintiff failed to present any evidence supporting her assertion that the general manager would appear above the chief engineer on an organizational chart of Holiday Inn management. Even if Plaintiff did present such evidence, Mr. Newman cannot be a comparator because he and Plaintiff are not similarly situated individuals. Plaintiff's only evidence supporting her claim is that "a white male who was working a lesser job" made more money than she did. (Doc. no. 38, at 12.) However, as noted above, this evidence, without a showing that the white male was a proper comparator, is not sufficient to survive summary judgment.

---

[7] Plaintiff argues in brief that Mr. Newman was not the "chief engineer" but was merely a maintenance worker who worked at the Holiday Inn. Regardless of Mr. Newman's title, the Court's analysis does not change. Mr. Newman and Plaintiff held different positions at the Holiday Inn, and therefore Mr. Newman cannot be considered a proper comparator.

Finally, Plaintiff cannot support a disparate pay claim as it relates to Mr. Sloan. Mr. Sloan, like Mr. Dushyant, Mr. Tate, and Mr. Newman, is not a proper comparator. Although he replaced Plaintiff as the general manager of the Holiday Inn, he was assigned additional responsibilities which justified his increased salary. Mr. Sloan, unlike Plaintiff, was tasked with managing and supervising three additional hotels. Moreover, Mr. Sloan held a CHA certification. (Bynes Dep. 82.) Mr. Sloan is simply not similarly situated to Plaintiff.

Because Plaintiff has failed to identify a proper comparator, her disparate pay claim fails as a matter of law.

## IV. CONCLUSION

Based upon the foregoing, Defendant's Motion for Summary Judgment (Doc. no. 36) is **GRANTED**. The Clerk is directed to **ENTER JUDGMENT** in favor of Defendant and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of June, 2012.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA